

Esports Entertainment Group, Inc.
112 North Curry Street
Carson City, Nevada 89703-4934

December 3, 2022

Dear Grant,

This letter serves as written notice of termination of employment for cause pursuant to Sections 5.02(b)(i) and 5.02(b)(iii) of your enclosed September 2020 Employment Agreement ("Agreement") with Esports Entertainment Group, Inc. including Esports Entertainment (EGL), Inc., GMBL New Jersey, Inc., Esports Services (Malta) Limited, XSeries Limited and Phoenix Games Network Limited ("Company").

This for cause termination is effective immediately.[1]

## Your Agreement

Article II of your Agreement describes your duties and obligations to the Company. In this regard, Section 2.01(a) provides "[d]uring the term of employment, Executive will: (i) [p]romote the interests, within the scope of his duties, of the Company . . . ; (ii) [s]erve as Chief Executive Officer of the Company; and (iii) "[p]erform the duties and services consistent with the title and function of such office, including without limitation, those set forth in the By-Laws of the Company."

Article V of your Agreement addresses Termination. And, Section 5.02(b), Cause, provides:

> Upon the Executive's commission of Cause (as defined herein). The term "Cause" shall mean the following:
>
> (i)      Any willful violation by Executive of any material provision of this Agreement (including without limitation Sections 6.01 and 6.02 hereof) causing demonstrable and serious injury to the Company, upon written notice of same by the Company describing in detail the breach, if capable of being cured, has not been cured within sixty (60) days after such notice or such longer period of time if Executive proceeds with due diligence not later than ten (10) days after such notice to cure such breach[;]
>
> (ii)      . . .

---

[1] Notwithstanding the Company is not obligated to pay severance, the Company will consider paying an additional amount to consult as described below equivalent to your current base salary from this effective date of termination through December 31, 2022 provided the parties memorialize a consulting agreement.

> (iii) Fraud or willful misconduct on the part of the Executive in the performance of his duties as an employee of the Company, or gross negligence on the part of the Executive in the performance of his duties as an employee of the Company causing demonstrable and serious injury to the Company, provided that the Company has given written notice of such breach which notice describes in detail the breach asserted and stating that it constitutes notice pursuant to this Section 5.02(b)(iii), and which breach, if capable of being cured, has not been cured within sixty (60) days after such notice or such long period of time if Executive proceeds with due diligence not later than ten (10) days after such notice to cure such breach; or
>
> Upon termination for Cause, the Company shall pay Executive his Base and benefits including vacation pay through the date of termination of employment; and Executive shall receive no severance under this Agreement.

As detailed below, you materially violated your enclosed Agreement by engaging in fraud, willful misconduct and/or were grossly negligent in the performance of your duties as the Chief Executive Officer of the Company. Said misconduct caused demonstrable and serious injury to the Company which, as also detailed below, is not capable of being cured.

Moreover, given the below described misconduct you failed to promote the Company. Also, there is the separate appearance that you promoted your own interest at Company expense.

### **Your Fraud, Willful Misconduct and/or Gross Negligence**

Less than a year after executing your Agreement, you executed and agreed to the terms of the enclosed May 28, 2021 Securities Purchase Agreement between the Company and Aryton ("Securities Agreement") and the enclosed related June 2, 2021 Senior Convertible Note between the Company and Aryton ("Senior Convertible Note").

The Securities Agreement and Senior Convertible Note allowed the Company to borrow Thirty Five Million Dollars ($35,0000,0000) in exchange for, among other things, extending Aryton the opportunity to convert portions of said debt to equity.

Section 3 of the Senior Convertible Note, entitled "Conversion of Note," provides at 3(d)(ii) that Aryton could elect to convert portions of the debt subject to stockholder approval. And, under Section 4.11 (d) of the Securities Agreement, <u>both</u> you and the Company represented that:

> Grant Johnson, the Company's Chief Executive Officer, agrees to vote all of the shares of Common Stock over which Grant Johnson or his Affiliates has voting control in favor of Shareholder Approval until such time as Shareholder Approval has been obtained or no Purchaser holds any Securities, which agreement by Grant Johnson shall not be revocable.

Notwithstanding your and the Company's irrevocable agreement, you voted against Aryton's conversion of debt. Either: you fraudulently and falsely promised to vote in favor of the debt conversion when you signed the May 28, 2021 Securities Purchase Agreement; or, after May 28, 2021, engaged in willful misconduct and/or gross negligence when you secretly determined that you and your Affiliates would vote against the debt conversion despite your and the Company's expressed irrevocable agreement. In either event, you failed to promote the interests of the Company.

On December 20, 2021, the stockholder votes were finalized and the stockholders - including yourself or your Affiliates as defined in the Securities Agreement - voted against converting the debt. As such, you caused the Company to breach the Securities Agreement. Further, the Company had also defaulted in its payment obligations under the Senior Convertible Note and, after you negotiated a temporary waiver of this payment default as set forth in the enclosed February 22, 2022 Exchange Agreement, the Company continued to remain in payment default.

On March 28, 2022, Aryton caused its attorneys to send the enclosed letter to the Board of Directors in connection with attempting to establish a constructive dialogue with the Board of Directors. Among other things, said letter notes your failure to vote as promised.

### **Demonstrable and Serious Injury Which Cannot Be Cured**

Your failures to vote as promised and failures to promote the interests of the Company caused the Company demonstrable and serious injury which cannot be cured because, among other things, Aryton is not willing to consent to the Company's selling assets or obtain loans and function as a going concern while you continue as Chief Executive Officer.

As Aryton has explained to the Board, you disavowed both your and the Company's promise to vote in favor of the debt conversion while negotiating, breaching, re-negotiating and again breaching multiple agreements. Apparently, Aryton does not trust you. And, as a result, the Company has no choice except to terminate you for cause.

### **Post Termination**

We remind you of your continuing obligations as provided in your Agreement including Article VI of your Agreement entitled Covenants.

In this regard, we trust that you will comply with your obligations under Sections: 6.01 requiring you to maintain the confidentiality of Company information; 6.02 providing that all records, papers and documents concerning the business of the Company belong to the Company; 6.03 concerning non-solicitation of Company employees and client and expressly prohibiting you from certain discussions concerning the Company and its business; 6.04 prohibiting unlawful competition; and 6.05 promising that you will not disparage the Company.

Provided that you timely return all Company property including electronics, keys, passwords, electronic data and files by no later than December 9, 2022 and continue to comply with your contractual and fiduciary post-termination obligations, the Company is willing to continue to

work with you as a consultant. In this regard, you would solely communicate with and answer questions from the acting Chief Executive Officer and their designee(s). If you are interested in continuing to work as a consultant, please contact the undersigned and we will memorialize such a consulting agreement.

Regardless of your decision to consult with the Company, you will receive a separate correspondence concerning your outstanding Base salary (if any) and accrued but unused vacation (if any).

If you have any questions concerning this letter, please contact the undersigned.


Sincerely,

Jan Jones Blackhurst