

**MELTZER LIPPE GOLDSTEIN & BREITSTONE, LLP**
190 Willis Avenue, Mineola, NY 11501 • T. 516.747.0300
www.meltzerlippe.com

*Michael H. Masri, Esq.*
*Phone: (516) 747-0300*
*E-mail: mmasri@meltzerlippe.com*

March 14, 2023

<u>**Via ECF**</u>
Honorable Paul G. Gardephe
United States District Court
Southern District of New York
40 Foley Square, Room 2204
New York, New York 10007

Re:   *Grant Johnson v. Esports Entertainment Group, Inc.*, 1:22-cv-10861 (PGG)
       <u>MLGB File No. 17818-00040</u>

Dear Judge Gardephe:

      We represent Defendant Esports Entertainment Group, Inc. ("Defendant" or "Esports") and write to respectfully request a pre-motion conference pursuant to Rule IV.A of the Court's Individual Rules of Practice in connection with making a motion to dismiss the First Amended Complaint ("Amended Complaint") pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative, potentially for summary judgment pursuant to Fed. R. Civ. P. 12(d).[1]

      Grant Johnson ("Plaintiff" or "Johnson") brought this action without basis in either fact or law, primarily claiming Esports breached Johnson's Employment Agreement as Chief Executive Officer (the "Employment Agreement") by terminating him for cause. However, the indisputable facts demonstrate Esports properly terminated Johnson's employment upon his commission of fraud and/or willful misconduct in the performance of his duties as CEO. Notwithstanding Esport's pre-motion letter (ECF Doc. 13) addressed to the original Complaint, Johnson's Amended Complaint fails to -- because it cannot -- remedy his pleading deficiencies.

      Johnson alleges Esports breached the Employment Agreement by:

a)      "terminating Plaintiff before the end of the initial term of the Employment Agreement despite the 'Cause' requirement at section 5.02(b)";

b)      "failing to give notice and 60 days within which to cure any alleged breach";

---

[1] A Court may consider documents attached to the Amended Complaint or incorporated by reference and extrinsic documents if they are integral to the pleading. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 46-48 (2d Cir. 1991). To the extent additional documentary evidence is submitted, Esports will request that the Court treat its motion as one for summary judgment pursuant to Fed. R. Civ. P. 12(d). We also respectfully request that the Court advise if the parties should submit Local Civil Rule 56.1 Statements of Material Facts in connection with the motion.

**MELTZER LIPPE GOLDSTEIN & BREITSTONE, LLP**
Honorable Paul G. Gardephe
March 14, 2023
Page 2

> c) "failing to pay contractually-agreed compensation, including both compensation already earned and compensation for the remainder of the current term of the Employment Agreement"; and
>
> d) "failing to pay agreed-upon compensation for any termination other than for cause."

*See* Amended Complaint at ¶¶ 42-45. As the Amended Complaint alleges, the Employment Agreement provides Esports may terminate the agreement on written notice to Johnson for "Cause", which is defined as:

> (i) **Any willful violation by Executive of any material provision of this Agreement** … **causing demonstrable and serious injury to the Company**, upon written notice of same by the Company describing in detail the breach asserted and stating that it constitutes notice pursuant to this Section 5.02(b)(i), which breach, **if capable of being cured**, has not been cured within sixty (60) days after such notice or such longer period of time if Executive proceeds with due diligence not later than ten (10) days after such notice to cure such breach[;] …
>
> (iii) **Fraud or willful misconduct on the part of the Executive in the performance of his duties as an employee of the Company, or gross negligence on the part of the Executive in the performance of his duties as an employee of the Company causing demonstrable and serious injury to the Company**, provided that the Company has given written notice of such breach which notice describes in detail the breach asserted and stating that it constitutes notice pursuant to this Section 5.02(b)(iii), and which breach, **if capable of being cured**, has not been cured within sixty (60) days after such notice or such long period of time if Executive proceeds with due diligence not later than ten (10) days after such notice to cure such breach; ….
>
> Upon termination for Cause, the Company shall pay Executive his Base and benefits … through the date of termination of employment; and **Executive shall receive no severance** under this Agreement.

*See* Amended Complaint at ¶ 14 (quoting Employment Agreement § 5.02) (emphasis added).

Thus, as Johnson's own Amended Complaint acknowledges, he is not entitled to any "Severance" payment upon termination for Cause (Amended Complaint at ¶¶ 14, 15); nor is Johnson entitled to future pay, bonuses or benefits. Johnson further admits he was terminated upon written notice in which "Defendant sets out its alleged basis for a for-cause termination beginning at page 2 of the December 3, 2022 letter (Ex. B) under the heading 'Your Fraud, Willful Misconduct and/or Gross Negligence.'" *Id*. at ¶¶ 16, 19 (the "Termination Letter"). The

**MELTZER LIPPE GOLDSTEIN & BREITSTONE, LLP**

Honorable Paul G. Gardephe
March 14, 2023
Page 3

section of the Termination Letter referenced in the Amended Complaint explains, in its entirety:

### Your Fraud, Willful Misconduct and/or Gross Negligence

Less than a year after executing your Agreement, you executed and agreed to the terms of the enclosed May 28, 2021 Securities Purchase Agreement between the Company and Aryton ("Securities Agreement") and the enclosed related June 2, 2021 Senior Convertible Note between the Company and Aryton ("Senior Convertible Note").

The Securities Agreement and Senior Convertible Note allowed the Company to borrow Thirty Five Million Dollars ($35,0000,0000 [sic]) in exchange for, among other things, extending Aryton the opportunity to convert portions of said debt to equity.

Section 3 of the Senior Convertible Note, entitled "Conversion of Note," provides at 3(d)(ii) that Aryton could elect to convert portions of the debt subject to stockholder approval.  And, **under Section 4.11 (d) of the Securities Agreement, <u>both</u> you and the Company represented that:**

**Grant Johnson, the Company's Chief Executive Officer, agrees to vote all of the shares of Common Stock over which Grant Johnson or his Affiliates has voting control in favor of Shareholder Approval until such time as Shareholder Approval has been obtained or no Purchaser holds any Securities, which agreement by Grant Johnson shall not be revocable**.

**Notwithstanding your and the Company's irrevocable agreement, you voted against Aryton's conversion of debt**.  Either: you fraudulently and falsely promised to vote in favor of the debt conversion when you signed the May 28, 2021 Securities Purchase Agreement; or, after May 28, 2021, engaged in willful misconduct and/or gross negligence when you secretly determined that you and your Affiliates would vote against the debt conversion despite your and the Company's expressed irrevocable agreement.  In either event, you failed to promote the interests of the Company.

On December 20, 2021, the stockholder votes were finalized and the stockholders - including yourself or your Affiliates as defined in the Securities Agreement - voted against converting the debt.  **As such, you caused the Company to breach the Securities Agreement**.  Further, the Company had also defaulted in its payment obligations under the Senior Convertible Note and, after you negotiated a temporary waiver of this payment default as set forth in the enclosed February 22, 2022 Exchange Agreement, the Company continued to remain in payment default.

**MELTZER LIPPE GOLDSTEIN & BREITSTONE, LLP**

Honorable Paul G. Gardephe
March 14, 2023
Page 4

> On March 28, 2022, Aryton caused its attorneys to send the enclosed letter to the Board of Directors in connection with attempting to establish a constructive dialogue with the Board of Directors. Among other things, said letter notes your failure to vote as promised.

*See* Termination Letter, annexed as Exhibit B to Amended Complaint (emphasis added).  The Termination Letter enclosed documents supporting Esports' allegations, which Johnson failed to annex to his Amended Complaint.

Notwithstanding Esports' clear and unambiguous Termination Letter, Johnson makes factually unsupportable and conclusory allegations that he was terminated improperly.

<u>First</u>, Johnson alleges that "[e]ven if true, these allegations [in the Termination Letter] would not constitute 'fraud, willful misconduct, and/or gross negligence.'"  *See* Amended Complaint at ¶ 20.  However, as detailed in the Termination Letter, Johnson made material representations on behalf of himself and Esports, including but not limited to, that he would vote his shares in favor of the Aryton transaction, which Johnson later proved false by voting against the transaction.  As the Termination Letter explains, either Johnson fraudulently and falsely promised to vote in favor of the debt conversion when he signed the Securities Agreement, or Johnson subsequently engaged in willful misconduct and/or gross negligence when he secretly determined to vote against the transaction despite his and the Company's expressed irrevocable agreement.  Johnson's knowing misrepresentation constitutes fraud, willful misconduct, and/or gross negligence as a matter of law.  Moreover, irrefutable documentary evidence rebuts the new allegation in Johnson's Amended Complaint that he voted in favor of the transaction.

<u>Second</u>, Johnson claims the allegations in the Termination Letter are false.  *See* Amended Complaint at ¶ 21.  However, indisputable documents referenced in and/or integral to the Amended Complaint demonstrate clearly that: (i) Johnson irrevocably promised to vote his shares in favor of the transaction; (ii) Johnson instead voted against the transaction; and (iii) Aryton asserted Johnson actively thwarted the transaction and thereby caused Esports to breach the agreement.  Johnson cannot disprove these basic facts.  While the Amended Complaint cites and attaches as Exhibit C minutes of an Esports Board meeting over which Johnson presided, indicating without explanation that the Board decided in April 2022 not to investigate him, that does not rebut indisputable facts concerning his misconduct.  If anything, the minutes reflect a "cover up" by Johnson.

<u>Third</u>, Johnson alleges Esports' allegations would not constitute Cause, which he claims requires "demonstrable and serious injury to the Company."  *See* Amended Complaint at ¶ 22 (citing Employment Agreement § 5.02(b)).  But Johnson misreads the Employment Agreement, which defines Cause to include "Fraud or willful misconduct on the part of the Executive in the performance of his duties as an employee of the Company, *or gross negligence on the part of the Executive in the performance of his duties as an employee of the Company causing demonstrable and serious injury to the Company*, provided that the Company has given written notice of such breach …."  *See* Employment Agreement § 5.02(b)(iii) (emphasis added).  As is clear in the italicized phrase set off by commas, the requirement of "demonstrable and serious injury" only applies to gross negligence, not to Johnson's fraud or willful misconduct.  *See Bacolitsas v. 86th*

**MELTZER LIPPE GOLDSTEIN & BREITSTONE, LLP**
Honorable Paul G. Gardephe
March 14, 2023
Page 5

& *3rd Owner, LLC*, 702 F.3d 673, 679 (2d Cir. 2012) (using the grammatical "rule of the last antecedent" of interpretation); *City of New York v. Fleet Gen. Ins. Grp., Inc*., 2021 WL 1906467, at *6 (E.D.N.Y. May 12, 2021) ("A limiting phrase ordinarily modifies '[t]he last antecedent'— that is, 'only the noun or phrase that it immediately follows.'"). Thus, while Esports can also demonstrate Johnson's misconduct caused serious injury to the company, the Court can dismiss Johnson's claim without reaching that issue because Johnson's fraud and/or willful misconduct does not require serious injury pursuant to the Employment Agreement.[2]

<u>Fourth</u>, Johnson alleges "Defendant breached section 5.02(b) by failing to give notice and 60 days within which to cure any alleged breach." *See* Amended Complaint at ¶ 23. But as the Termination Letter explains, Johnson's fraud and misconduct was incapable of being cured because Aryton was not willing to consent to Esports selling assets or obtaining critical loans while Johnson was CEO. Thus, sixty (60) days' notice was not required here because the Employment Agreement explicitly only requires such notice of the breach "if capable of being cured." Here, there was no such capability.

In addition, Johnson claims he is entitled to certain cash and stock compensation he allegedly earned before his termination. *See* Amended Complaint ¶¶ 24, 26, 27. However, clear documentary evidence demonstrates Johnson forfeited and/or was not entitled to such alleged compensation. To the extent the relief sought in Defendant's motion would not dispose of Plaintiff's claim entirely, Defendant respectfully requests that the Court extend Defendant's time to file an Answer pending the Court's decision on the motion.

Johnson's Amended Complaint includes a defamation cause of action, alleging Esports' January 13, 2023 Form S-1 and February 21, 2023 Form 10-Q SEC disclosures falsely state "Johnson was terminated for cause ...." (Amended Complaint ¶¶ 29, 30, 34, 48-51.) Notwithstanding: (i) "the statement at issue is protected by a common interest qualified privilege and the pleading lacks adequate allegations of ... malice to overcome such privilege." *Loughlin v. de Bary*, 212 A.D.3d 557, 558-59 (1st Dep't 2023); (ii) the statements are true; (iii) Johnson filed the instant lawsuit publicizing his termination for cause prior to the SEC disclosures; and (iv) the SEC disclosures explicitly discuss Johnson's instant legal proceeding.

We are available for a pre-motion conference with the Court should the Court so require. If the Court permits the motion, we ask that Defendant be granted further and sufficient time to brief the motion. Thank you for the Court's courtesies and attention to this matter.

Respectfully submitted,

/s/ Michael H. Masri
Michael H. Masri

cc:  All Counsel of Record via ECF

---

[2] Esports can demonstrate serious injury supporting Johnson's for Cause termination because he willfully violated material provisions of the Employment Agreement (pursuant to section 5.02(b)(i), including *inter alia*, failing to promote the Company as section 2.01(a)(i) requires.