```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

GRANT JOHNSON

              Plaintiff

         v.                              22 Civ. 10861 (PGG)
                                            Conference

ESPORTS ENTERTAINMENT GROUP
INC.

              Defendant

------------------------------x
                                         New York, N.Y.
                                         May 4, 2023
                                         10:45 a.m.
Before:

                   HON. PAUL G. GARDEPHE

                                         District Judge

                         APPEARANCES

ALAN L. FRANK LAW ASSOCIATES PC
     Attorney for Plaintiff
ALAN L. FRANK

MELTZER LIPPE GOLDSTEIN & BREITSTONE LLP
     Attorneys for Defendants
STEVEN E. FRANKEL
MICHAEL H. MASRI
```

```
 1              (In open court; case called)
 2              DEPUTY CLERK:  Counsel for plaintiff, please state
 3   your appearance.
 4              MR. FRANK:  Good morning, your Honor.  Alan Frank for
 5   the plaintiff.
 6              DEPUTY CLERK:  For defendant.
 7              MR. FRANKEL:  Steven Frankel and my colleague, Michael
 8   Masri.
 9              THE COURT:  Good morning.
10              This matter is on my calendar for purposes of
11   conducting an initial pretrial conference, as well as a
12   premotion conference.  This is an action by plaintiff Johnson
13   against. defendant Esports Entertainment Group Inc.  The
14   amended complaint alleges breach of an employment agreement as
15   well as defamation.  Defendant seeks permission to move to
16   dismiss under Rule 12(b)(6) or, in the alternative, summary
17   judgment.
18              The background is as follows:
19              The Amended Complaint alleges that the parties entered
20   into an Employment Agreement September 2020 (Am. Cmplt. (Dkt.
21   No. 17) paragraph 6)  The Employment Agreement states that
22   defendant "'Will continue to employ [plaintiff] for the period
23   beginning retroactively on February 1, 2020 ... and ending on
24   January 31, 2025.'" (Employment Agreement (Dkt. No. 17-1))
25              The Agreement further provides for plaintiff's base
```

compensation, cash bonus, and stock bonus, and addresses the ways by which plaintiff may be terminated. (*Id*.) **Section 5.02(b) of the Employment Agreement provides that defendant may terminate the Employment Agreement "upon written notice to" plaintiff for, among other things, "any willful violation by [plaintiff] of any material provision of this Agreement ... causing demonstrable and serious injury to the Company," as well as "fraud or willful misconduct on the part of [plaintiff] in the performance of his duties as an employee of the Company, or gross negligence on part of [plaintiff] in the performance of his duties as an employee of the Company causing demonstrable and serious injury to the Company." (*Id*. Section 502(b))  In providing the reference "written notice," the Company must describe the conduct that justifies termination.  If the alleged breach is capable of cure, plaintiff is given 60 days to cure.  (*Id*.).**

In the Amended Complaint, plaintiff alleges that, on December 3, 2022, defendant terminated his employment pursuant to a termination letter stating that his termination was for cause (Am. Cmplt. (Dkt. No. 17) paragraph 16-17)  Defendant terminated plaintiff's employment immediately and did not provide 60 days' notice or an opportunity to cure.  (*Id*. paragraph 18)  The termination letter states that plaintiff is being terminated for "fraud, willful misconduct and/or gross negligence" (*Id*. paragraph 19)

In the termination letter, defendant states that plaintiff executed and agreed to the terms of the May 18, 2021 Securities Purchase Agreement between defendant and another entity Aryton Capital LLC, as well as a related June 2, 2021 Senior Convertible Note between defendant and Aryton (Termination Letter (Dkt. No. 17-2) at 2)  These documents allow defendant to borrow $35 million "in exchange for, among other things, extending Aryton the opportunity to convert portions of said debt to equity" (*Id*.)  The termination letter states that the Senior Convertible Note provides that "Aryton could elect to convert portions of the debt subject to stockholder approval," and that under the Security Purchase Agreement, both plaintiff and defendant represented that plaintiff agreed to vote all of his shares in favor of the proposed Aryton transaction.  (*Id*.) The Termination Letter further states that on December 20, 2021, the stockholder votes were finalized and the stockholders, including plaintiff, voted against the conversion of debt, which caused defendant to breach the Securities Purchase Agreement.  (*Id*. at 3)

In the Amended Complaint, plaintiff alleges that the allegations set forth in the Termination Letter are false, and that even if they were true, the allegations would not amount to "fraud, willful misconduct and/or gross negligence." (Am. Cmplt. (Dkt. No. 17) paragraphs 20-21)  Plaintiff explains that while the Termination Letter states that he voted his shares

1   against the proposed conversion of debt, he in fact voted in
2   favor of the transaction. (*Id*. paragraph 21)
3   　　　　In sum, the Amended Complaint contends that defendant
4   breached the Employment Agreement by terminating plaintiff's
5   employment without cause before the end of the specified
6   five-year term.  Plaintiff further complains that defendant did
7   not provide the required 60 days' written notice and did not
8   give him an opportunity to cure.  (*Id*. paragraphs 22-25)
9   　　　　As to the defamation claim, plaintiff alleges that in
10  the Company's S-1 statement, which was filed with the SEC and
11  published on January 13, 2023, defendant falsely stated that
12  plaintiff was terminated for cause.  (*Id*. paragraphs 29-33)
13  Plaintiff alleges that these false statements were repeated in
14  defendant's 10-Q filing on February 21, 2023. (*Id*. paragraph
15  34)  Plaintiff alleges that these statements were made either
16  with knowledge of their falsity or in reckless disregard of the
17  truth, and that the defamation constitutes defamation per se
18  because it concerns plaintiff's trade, business, or profession.
19  (*Id*. paragraphs 35-36)
20  　　　　As I noted, defendant has requested permission to file
21  a Rule 12(b)(6) motion to dismiss (Dkt. No. 18).  I am going to
22  give you now my impressions of the proposed motion based on
23  what I've read to date.  I will not be ruling on any motion or
24  any issue today.  However, I have found it useful to give
25  parties my impressions of a proposed motion before the motion

1    is filed in order to avoid wasteful motion practice.

2            Defendant contends in its premotion letter that "the
3    indisputable facts demonstrate [that defendant] properly
4    terminated [plaintiff's] employment upon his commission of
5    fraud and/or willful misconduct in the performance of his
6    duties as CEO." (*Id.*)  According to defendant, "indisputable
7    documents referenced in and/or integral to the Amended
8    Complaint demonstrate clearly [defendant's position]" (*Id.*)
9    But defendant does not specify what these documents are, nor
10   has it provided them to the Court.

11           Moreover, on a Rule 12(b)(6) motion, the Court is
12   required to accept as true the well-pleaded factual allegations
13   in the Complaint.  (*Kassner v. 2nd Avenue Delicatessen Inc.* 496
14   F.3d, 229, 237 (2d Cir. 2007).  And here, plaintiff appears to
15   have sufficiently alleged his breach of contract and defamation
16   claims.  Although defendant asserts – without any evidentiary
17   support – that plaintiff voted against the Aryton transaction,
18   (Mar. 14, 2023 Def. Ltr. (Dkt. No. 18) at 4), plaintiff alleges
19   in the Amended Complaint that he "voted in favor [of the
20   proposed transaction]" (Am. Cmplt. (Dkt. No. 17) paragraph 21)
21   On a motion to dismiss, I'm required to accept that allegation
22   as true.  Accordingly, it is entirely unclear to me how
23   plaintiff's actions constitute fraud, willful misconduct, or
24   gross negligence, as defendant claims.  And it appears to me
25   that plaintiff has adequately pled a breach of the Employment

Agreement.

As to plaintiff's defamation claim, defendant asserts – again without any evidentiary support – that its statement in the S-1 and 10-Q are true. (Mar. 14, 2023 Def. Ltr. (Dkt. No. 18) at 5). But the Amended Complaint asserts that the statements in the S-1 and 10-Q are false. (Am. Cmpl (Dkt. No. 17) paragraph 31) Again, under the law, I'm required to accept the well-pleaded factual allegations in the Complaint as true.

Defendants other arguments – which are that its statements are protected by the common interest qualified privilege, and that plaintiff publicized his termination for cause prior to the SEC disclosure filings. (*See* Mar. 14, 2023 Def. Ltr. (Dkt. No. 18) at 5) – are obviously not pled in the Complaint and cannot be resolved on a motion to dismiss.

As to defendant's alternative request that it be granted permission to move for summary judgment, prediscovery motions for summary judgment are disfavored in this circuit. "Only in the rarest of cases may summary judgment be granted against a party who has not been afforded the opportunity to conduct discovery." (*Ass'n of Car Wash Owners Inc. v. City of New York* 911 F.3d 74, 83, (2d Cir. 2018) which in turn is (quoting *Hellstrom v. U.S. Dept of Veterans Affairs,* 201 F.3d 94, 97 (2d Cir. 2000). This is not one of those rare cases. Moreover, defendant has not provide any evidentiary support for

its assertion that plaintiff voted against the Aryton transaction or that plaintiff "actively thwarted" the transaction and thereby caused defendant to breach the Securities Purchase Agreement it had entered into with Aryton. (*See* Mar. 14, 2023 Def. Ltr. (Dkt. No. 18), at 4)

For these reasons, I am concerned that there would not be a good faith basis for the filing of a motion to dismiss, much less a motion for summary judgment.

I am going to ask defendant to consider what I've said this morning about its proposed motion, to consult with the client, and then take steps necessary to avoid what I believe would be wasteful motion practice.

Defendant will submit a letter in one week's time telling me how it wishes to proceed.  If defendant disagrees with the analysis I've set forth today, it will explain why.

As to the parties' Rule 16 joint letter and proposed case management plan, defendant seeks a stay of discovery pending resolution of its proposed motion to dismiss (Jt. Ltr. (Dkt. No. 20) at 2)  That application is denied.  Discovery will proceed.

In their joint submission, the parties disagree as to an appropriate discovery schedule.  Plaintiff has proposed dates that fall when my model for this type of case.  Without explanation, defendant seeks dates that would take us out to late February 2024.  I see no basis for a ten-month discovery

1  period here.  Accordingly, I will adopt the dates proposed by
2  plaintiff.  Fact discovery will conclude by July 12, 2023, and
3  expert discovery will conclude by July 26, 2023.
4          The parties state that they have discussed early
5  mediation before they spend time and resources engaging in
6  discovery.  I endorse that approach.  If the parties agree at
7  any point that a settlement conference before the assigned
8  Magistrate Judge Katharine Parker, might be productive, please
9  let me know, and I will refer the case to her for purposes of a
10 settlement conference.
11         Mr. Frank, is there anything you wish to say at this
12 point?
13         MR. FRANK:  Your Honor, no.  Thank you very much.
14         THE COURT:  Mr. Frankel?
15         MR. FRANKEL:  Your Honor, with respect to the
16 discovery schedule that your Honor just cited that your Honor
17 is going to use plaintiff's schedule, we submitted yesterday to
18 the Court basically based on the fact that this conference
19 today was adjourned by three weeks, that we could at least
20 adjourn all the dates by three weeks to accommodate that.
21 Otherwise, we would have already missed some of the deadlines,
22 in fact, and others are coming up very soon.  So we would at
23 least respectfully request that your Honor push everything out
24 by three weeks.
25         THE COURT:  I used the dates in your most recent

1   letter.  When I say "I used the dates," I used the dates that
2   plaintiff had proposed in your most recent letter, the one that
3   you're talking about, the one that was filed yesterday.
4           MR. FRANKEL:  Your Honor, I'm not -- I don't mean to
5   say anything contrary to what your Honor says, but I believe
6   that the dates we have for the ending of fact discovery
7   according to the revised dates that we sent yesterday,
8   plaintiff's fact discovery date would require August 2.
9           THE COURT:  Stop.  You're quite right.  I was looking
10  at the typewritten dates, but I notice that the parties have
11  written handwritten notations.  I missed the handwritten
12  notations.  I was relying on the typewritten dates.  So you're
13  quite right.
14          So the handwritten dates provide for the conclusion of
15  fact discovery on August 2, 2023, and the completion of expert
16  discovery by August 16, 2023.  I will use the handwritten dates
17  that the parties have added rather than the typewritten dates.
18  That was my mistake.
19          MR. FRANKEL:  Your Honor, just to clarify.  I
20  appreciate that it was only defendant that submitted that.  I
21  just want to be clear on the record that it wasn't the parties
22  jointly supplying that letter yesterday.  Just to clarify the
23  record on that.
24          THE COURT:  Okay.  But the handwritten dates say P and
25  D, so I'm assuming P means plaintiffs proposed dates and D

1    means defendant's proposed dates.  Is that correct?
2             MR. FRANKEL:  Correct, your Honor.  What that was
3    intended to show was based on the original dates that plaintiff
4    showed and defendant showed, if we kick everything by three
5    weeks, this is what the plaintiff's dates would be, and this is
6    what the defendant's date would be, just to clarify that, your
7    Honor.
8             THE COURT:  Mr. Frank, do you agree with that
9    representation?
10            MR. FRANK:  Yes.  And August 2 and August 16 are fine,
11   Judge.  I want to add that the reason we have a brief
12   adjournment was based on my request, and my colleagues said
13   okay, they consented.  I'm very appreciative of that.  I see no
14   reason why we should not adjourn, shall we say, the July 12
15   fact discovery deadline until August 2, especially in light of
16   my colleague's cooperation.  Likewise, with respect to
17   August 16 with respect to the expert deadline, your Honor.
18   Thank you.
19            THE COURT:  I will use the handwritten dates.  Let me
20   ask the parties, have there been any efforts to settle this
21   dispute?
22            MR. MASRI:  Yes.
23            THE COURT:  And what's been the holdup, do you think?
24            MR. MASRI:  I don't know.
25            MR. FRANK:  We have, how can I phrase it correctly,

1   the words I would use would be high-energy clients, and one is
2   the former CEO of this publicly traded company.  The other, I
3   think de facto is Mr. Aryton, although I could be wrong on
4   that, but I could -- my colleague is saying I may be wrong.
5   But, nonetheless, there's been argument here about liability.
6   I think once we get past liability, we should be able to sit
7   down and have some numbers put together, and that would be
8   that.
9           The part of your analysis -- I didn't want to
10  interrupt you, your Honor, but in the factual overview, your
11  Honor was kind enough to read it, there's a separate component
12  of damages exceeding a million dollars for the undelivered
13  shares that were earned by Mr. Johnson in 2021 from 2021
14  acquisitions.  He wasn't terminated until the end of 2022.  So
15  there is a whole component or facet of this case that is
16  really -- that will not even turn on the results of whether it
17  was for cause or was not a for cause.  I don't know if
18  Mr. Masri has been able to persuade his client to see that.
19          We understand damages from that component under what
20  we think to be controlling law would be in excess of $1 million
21  based on that type of claim that I've handled in other matters.
22          So I think we probably could get together swiftly
23  here.  I would not want the timeline, however, to be adjourned.
24  I don't sense your Honor is prepared to do that, but we are
25  certainly prepare to entertain quite seriously a mediation.  It

1   could be with a magistrate.  I have no prior experience with
2   this magistrate, but I can tell you all over the country, your
3   Honor, that the magistrates have been phenomenal, so I'm
4   certainly okay with that, or we could use a private panel or
5   person, maybe with JAMS or AAA.  All of that would be fine.  I
6   do know a fellow to fly in from Toronto, so it's a bit of an
7   item to bring him, but he'll come.  It's no problem.
8            THE COURT:  Quite honestly, I would urge the parties
9   to attempt to resolve this before money -- before more money is
10  spent on it.  You are fortunate in that this particular
11  magistrate is really very gifted at settlement.  If you check
12  out her background, you will see that she has an appropriate
13  background for resolving this type of commercial case.  And I
14  do suggest that you make use of that resource.  I don't force
15  people to go to settlement conferences, so -- I don't order
16  people to mediation or order them to settlement conferences,
17  but if you do believe that a neutral would be helpful in
18  bringing the dispute to resolution, I would strongly suggest
19  that you consider going to the magistrate because I think she
20  is quite gifted and might be helpful to you in bringing this
21  matter to an early resolution.
22           There may be factual disputes that would prevent you
23  from having a productive conversation now, I don't know, and so
24  there are reasons why it's not always practical to attempt to
25  resolve a dispute right at the outset, but here I would urge

1   you to make that effort.

2         Yes, sir?

3         MR. MASRI:  Good morning, your Honor first.  I'd like
4   to say that my discussions with Mr. Frank have always been very
5   collaborative and very professional and, you know, of course, I
6   recognize Mr. Frank's experience in this area, you know, and
7   part of the suggestion of going to mediation, it came from us
8   and it's always, you know, our go-to.  In fact, it's the -- I
9   think it's the best practice for every commercial litigator,
10  you know, in New York and elsewhere.

11        And in fairness to Mr. Frank, there was a question of
12  whether or not we were in the same ballpark with respect to
13  numbers and everything else like that, and we also have a
14  pretty stark contrasting understanding of what the facts are,
15  and we look forward to the opportunity speaking with our
16  client, speaking with Mr. Frank, talking about the
17  documentation now that the complaint has been, you know,
18  amended and we have a better sense of what it is that they're
19  talking about, and we would just endeavor to move things along
20  in whatever direction as efficiently and as fairly as possible.

21        Thank you, your Honor.

22        THE COURT:  All right.  Well, I certainly appreciate
23  that.  As I said, if you do reach a point where there is a
24  consensus that a settlement conference before the magistrate
25  could be useful, just let me know, and I will do an Order

1   referring the case to her for settlement purposes.

2            Now, of course, we do have a court-sponsored mediation
3   program that's available to you also.  I tend to recommend the
4   magistrate first because I am more confident that she could see
5   you more quickly.  There is a long delay often in mediation
6   because the mediators' schedules are such that they can't see
7   parties as quickly as the parties often want to.  So that is
8   why I suggest the magistrate.

9            Also, I know who the magistrate is.  I don't know who
10  the mediator is.  So I can make representations about the
11  quality of the magistrate.  I can't make representations about
12  the quality of the mediator because I don't know who it's going
13  to be

14            MR. MASRI:  Judge, I'm a trained mediator.  We've been
15  to JAMS a couple of times.  I've resolved matters.  We do it
16  all the time.  Obviously, not every single case goes to trial.
17  The fact of the matter is the implementation of ADR in both
18  state and federal courts have really started to be effective in
19  cleaning up the docket.  This is federal court.  No one is
20  engaging in gamesmanship here.

21            Mr. Frank and I, we have never had a problem picking
22  up the phone and speaking with each other.  We've got a week
23  period to sit down, and you know, internally ourselves and also
24  it's not as though Mr. Frank is unavailable if I want to chat
25  with him about ballparks and everything else.

1    So if for whatever -- unless we go to the magistrate
2    and just in the interest of expediency, we may just jump on
3    over to one of the private mediators and just get it done.
4        THE COURT: Absolutely. To state the obvious, there
5    is plenty of fine people at JAMS too. I know a lot of people
6    there, obviously retired magistrate judges and obviously lots
7    of fine people there. So whatever the parties want in that
8    regard, it's up to them, whatever they think is the most
9    efficient way to proceed by all means.
10       MR. MASRI: I'm pretty active in the state bar
11   associations alternative dispute sections. Thank you, your
12   Honor.
13       THE COURT: Okay. Mr. Frank, anything else you want
14   to say?
15       MR. FRANK: Not for our side. Thanks very much, your
16   Honor. It's obvious to us that you took the time to go through
17   this case, and we do appreciate that. That doesn't always
18   happen. This time it did.
19       THE COURT: All right.
20       Mr. Frankel and Mr. Masri, anything else you want to
21   say on behalf of defendant?
22       MR. MASRI: Aside from echoing Mr. Frank's
23   appreciation of your Honor's and chambers' professionalism and
24   efforts, we have nothing further to add, your Honor. You'll be
25   hearing from us within a week.

N54QjohC

1           MR. FRANKEL:  Thank you, your Honor.
2           THE COURT:  Thank you so much.  Good day.
3           (Adjourned)
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25