

**MELTZER LIPPE GOLDSTEIN & BREITSTONE, LLP**
190 Willis Avenue, Mineola, NY 11501 • T. 516.747.0300
www.meltzerlippe.com

*Michael H. Masri, Esq.*
*Phone: (516) 747-0300*
*E-mail: mmasri@meltzerlippe.com*

June 16, 2023

**Via ECF**
Honorable Paul G. Gardephe
United States District Court
Southern District of New York
40 Foley Square, Room 2204
New York, New York 10007

Re:  *Grant Johnson v. Esports Entertainment Group, Inc.*, 1:22-cv-10861 (PGG)
     MLGB File No. 17818-00040

Dear Judge Gardephe:

We represent defendant Esports Entertainment Group, Inc. ("Esports") and write in response to plaintiff Grant Johnson's ("Johnson") June 13, 2023 Pre-Motion Letter (the "Pre-Motion Letter") concerning Johnson's proposed motion to dismiss Esports' Counterclaims under Rule 12(b)(6) (ECF 35). Respectfully, Johnson's requests for a pre-motion conference and to file a motion to dismiss Esports' Counterclaims, which more than adequately state legal causes of action, should be denied. Alternatively, Esports requests that the Court permit Esports to amend its Answer with Counterclaims ("Counterclaims") (ECF 32) to include additional allegations in further support of its claims.

Johnson's five (5) conclusory arguments lack legal support and are contrary to law.[1] In addition, Johnson's Pre-Motion Letter misleads by omission by citing select allegations while ignoring supporting factual allegations. Each argument fails as a matter of law.

1. **Esports' First Counterclaim Sufficiently States a Claim for Breach of Contract**

First, Johnson incorrectly offers the factual conclusion that the Counterclaims fail to allege he breached any provisions the Employment Agreement. However, Esports' Counterclaims allege Johnson breached Article II, § 2.01 of the agreement by acting in his own self-interest and failing to "[p]romote the interests" of Esports. *See* Counterclaims at ¶¶ 7, 30; *see also* Employment Agreement (ECF 17-1).

Johnson baselessly argues he did not breach the Employment Agreement because the agreement does not expressly state that "voting against the debt conversion transaction" constitutes a breach. However, the Counterclaims properly and sufficiently allege that by voting against the debt conversion transaction and also causing Esports to default on payment

---

[1] Indeed, Johnson's entire letter cites only a single, easily distinguishable case.

4860-6218-0714

obligations, Johnson acted in his own self-interest and contrary to Esports' interest and failed to promote the interests of Esports, in breach of §§ 2.01 and 5.02 of the Employment Agreement. *See The Resource Mine, Inc. v. Gravity Microsystem LLC*, 09-cv-0573, 2015 WL 8665444 (E.D.N.Y. Dec. 11, 2015) (declining to dismiss breach of employment agreement claim where complaint sufficiently alleges that employee's conduct "was in violation of his agreement to use his best efforts to promote the interests of [the employer].") Notably, Johnson cites no authority for his conclusory and erroneous argument.

Esports' Counterclaims allege Johnson breached the Employment Agreement because: (i) according to § 4.11(d) of the Securities Agreement with Alto Opportunity Master Fund, SPC ("Ayrton"), Johnson agreed to vote his personal and affiliate's shares in favor the debt conversion transaction; (Counterclaims, ¶ 12); (ii) by voting against, Johnson caused Esports to breach the Securities Agreement (*id.*, ¶ 17); (iii) Johnson also caused Esports to default on payment obligations (*id.,* ¶ 18); (iv) by causing Esports to breach and default on its obligations, Johnson breached §§ 2.01 and 5.02 of the Employment Agreement (*id.,* ¶¶ 30-32). This more than sufficiently pleads that Johnson breached the Employment Agreement.

## 2. Johnson Was Not Entitled to Written Notice to Cure His Breach Because His Breach was Incurable

Second, Johnson suggests dismissal is warranted because the Counterclaims do not allege that Esports provided "written notice" to Johnson, notwithstanding § 5.02 of the Employment Agreement does not entitle Johnson to written notice because his breach was not "capable of being cured." *See* Counterclaims, ¶ 8.

Moreover, as recently explained by a New York appellate court:

[N]otice to cure is not required where the breach is impossible to cure, or so substantial that it "undermines the entire contractual relationship such that it cannot be cured" (*Giuffre Hyundai, Ltd. v. Hyundai Motor Am.*, 756 F.3d 204, 209-210 [2d Cir. 2014] [invoking New York common law]). This is based on "the common law contract principle that ... a material breach that goes to the root of the matter or the essence of the contract constitutes grounds for rescission without opportunity to cure" (*Sea Tow Servs. Intl., Inc. v. Pontin*, 607 F.Supp.2d 378, 389 [E.D.N.Y. 2009] ["when the misfeasance is incurable and when the cure is unfeasible"] [internal quotation marks omitted]).

*E. Empire Constr. Inc. v. Borough Constr. Group LLC*, 156 N.Y.S.3d 148, 152 (1st Dep't 2021).

Moreover, Esports' Counterclaims specifically allege that Johnson's breach could not be cured. *See* Counterclaims, ¶¶ 24, 33; *see also* Esports' March 14, 2023 letter to the Court at p. 5 (ECF 18) (explaining why Johnson is not entitled to 60 days' notice to cure a breach which cannot be cured). Accordingly, Johnson's argument fails as a matter of both fact and law.

### 3. The Counterclaims Satisfy the Applicable Pleading Requirements

Third, Johnson offers the unsupported conclusion that Esports' Counterclaims do not meet the heightened standard for pleading a fraud claim under Rule 9(b).

Johnson fails to cite any authority while resting on the Counterclaims' use of the words "fraudulently and falsely" when describing Johnson's promises to vote in favor of the debt conversion. However, Esports is not pleading a fraud claim under Rule 9(b). Esports' Counterclaims allege: (1) breach of contract and (2) breach of loyalty/faithless servant doctrine. Allegations of fraudulent conduct do not, without more, bring a pleading within the purview of Rule 9(b). *See U.S. Commodity Futures Trading Commn. v. Amaranth Advisors, L.L.C.*, 554 F. Supp. 2d 523, 531 (S.D.N.Y. 2008) (holding that Rule 9(b) standard did not apply, even though the complaint made allegations concerning false statements or the concealment of information).

Moreover, Esports' Counterclaims comply with Rule 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *See* Counterclaims, ¶¶ 9-13 (Johnson executed and agreed to the terms of a May 28, 2021 Securities Agreement in which he agreed to vote all of his and his Affiliates' shares in favor of approval); ¶ 15 (the votes on the debt conversion transaction were finalized on December 20, 2021); ¶ 16 (Johnson voted against the debt conversion transaction despite his promise to vote in favor); ¶ 22 (Johnson "secretly determined that he and/or his Affiliates would vote against the debt conversion despite Johnson and Esports' expressed irrevocable agreement"). These allegations, and others, sufficiently provide Johnson "with fair notice of the claims" and satisfy Rule 9(b). *E.g., Arizona Premium Fin., Inc. v. Bielli*, 77 F. Supp. 2d 341, 345 (E.D.N.Y. 1999). In addition, Esports' claim that Johnson breached his Employment Agreement by causing Esports to default on its payment obligations, and to remain in default, does not rely on any allegations concerning fraud. *See* Counterclaims, ¶¶ 18-20, 31.

In the event the Court determines more particularity is required, Esports respectfully requests leave to amend the Counterclaims to supply additional information. *Stradford v. Zurich Ins. Co.*, 02-cv-3628, 2002 WL 31027517, at *3 (S.D.N.Y. 2002) ("it is the usual practice in this Circuit, when there was no prior opportunity to replead, to grant a litigant who has suffered a dismissal under Rule 9(b) leave to amend so that he may conform his pleadings to the Rule").

### 4. Johnson's Misconduct and Disloyalty are Actionable Under the Faithless Servant Doctrine

Fourth, Johnson erroneously argues the faithless servant doctrine does not apply because the Counterclaims only allege a single act of misconduct. Johnson fails to recognize that there are two alternative standards under which an employee may be found liable under the faithless servant doctrine. "The first standard requires that 'misconduct and unfaithfulness ... substantially violate[ ] the contract of service,' . . . . The second standard requires only that an agent "'act[ ] adversely to his employer in any part of [a] transaction, or omit[ ] to disclose any interest which would naturally influence his conduct in dealing with the subject of [his] employment.'" *Carco Group, Inc. v. Maconachy*, 383 Fed. Appx. 73 (2d Cir. 2010) (citations omitted) (finding employee violated both standards); *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184

(2d Cir. 2003) (same). Even the single case cited by Johnson, *Babbitt v. Koeppel Nissan, Inc.*,[2] recognized "New York courts have not reconciled any differences between [the two standards], or defined the circumstances, if any, in which one standard should apply rather than the other." 18-cv-5242, 2020 WL 3183895, at *6 (E.D.N.Y. June 15, 2020).

Johnson erroneously argues that the faithless servant doctrine does not apply because the Counterclaims only allege one incident of misconduct. To the extent that "a single act of disloyalty" is insufficient to state a claim, that defense appears only applicable to the first standard articulated by the courts. *See Phansalkar,* 344 F.3d at 201-02 (explaining that "a single act" of disloyalty is generally insufficient to state a faithless servant claim under the **first standard** of the faithless servant doctrine). The second standard, "misconduct by an employee that rises to the level of a breach of a duty of loyalty or good faith" is not limited based on the quantity of incidents of misconduct. *Id.* Rather, under the second standard, what matters is whether the employee's conduct "fell below the standard required by the law of one acting as an agent or an employee of another." *Id.* (citations omitted). Here, Johnson is a faithless servant under both standards.

With respect to the first standard, the Counterclaims properly allege a pattern of misconduct with respect to Johnson's employment, the debt conversion transaction, and the default. For example, Esports alleges that Johnson improperly and for his own benefit voted against the debt conversion transaction notwithstanding his agreement to vote in favor. *See* Counterclaims, ¶¶ 41-44. Thereafter, Johnson falsely continued to maintain he voted in favor of the transaction and even alleges in his Amended Complaint that he "in fact voted in favor". *See, e.g.* Johnson's Amended Complaint, ¶ 21 (ECF 17); Esports' Answer, ¶ 21 (EFC 32) (denying allegations). In addition, Johnson caused Esports to default on its payment obligations to Aytron under the Senior Convertible Note, and to remain in default, damaging Esports in the amount of approximately $6,000,000. *See* Counterclaims, ¶¶ 18-20, 42.

Under the first standard, even a single incident of disloyalty, together with additional related misconduct, is sufficient to state a faithless servant claim. *See, e.g., Stanley v. Skowron*, 989 F. Supp. 2d 356 (S.D.N.Y. 2013) (an employee's misconduct and unfaithfulness substantially violated the employment agreement where he committed insider trading once, lied and covered up this fact); *Probulk Carriers Ltd. v. Peraco Chartering USA LLC*, 11-cv-5686, 2012 WL 3095319, at *8 (S.D.N.Y. July 20, 2012) (declining to dismiss claims where "although Peraco appears to argue that the alleged disloyalty at issue is only a 'single act' …, a mere cursory review of the allegations in the Amended Complaint belies this point"); *Design Strategies, Inc. v. Davis*, 384 F. Supp. 2d 649 (S.D.N.Y. 2005), *aff'd sub nom. Design Strategy, Inc. v. Davis*, 469 F.3d 284 (2d Cir. 2006) (an employee's misconduct and unfaithfulness substantially violated an employment agreement where the employee's wrongdoing related to a single business opportunity, involving conduct over a period of time). Thus, Esports has sufficiently pleaded a claim under the first standard of the faithless servant doctrine.

In addition, Johnson is also a faithless servant under the second standard, that "any

---

[2] The holding in the *Babbitt* case is distinguishable because there, the Court dismissed the faithless servant claim since, unlike here, the pleading contained only conclusory allegations of misconduct and disloyalty.

misconduct that rises to the level of a breach of the duty of loyalty or good faith is sufficient to warrant forfeiture." *Shamrock Power Sales, LLC v. Scherer*, 12-cv-8959, 2015 WL 5730339, at *23 (S.D.N.Y. 2015) (citations omitted) (misconduct breaches the duty of loyalty "where an agent acts adversely to his employer in any part of a transaction, or omits to disclose any interest which would naturally influence his conduct in dealing with the subject of his employment"). Here, the Counterclaim allegations described above sufficiently allege facts demonstrating Johnson's disloyalty.

Should the Court determine additional information must be pleaded, Esports respectfully requests leave to amend the Counterclaims to supply additional allegations.

### 5. Johnson's Argument that Esports "Knew of and Tolerated" the Misconduct is False and Contradicted By the Allegations in the Counterclaims

Finally, Johnson argues that the faithless servant claim should be dismissed because Esports knew of and tolerated his behavior. However, the allegations in the Counterclaims belie any argument that Esports "knew of and tolerated" Johnson's misconduct. To the contrary, the Counterclaims demonstrate that Esports terminated Johnson specifically because of his misconduct.

Johnson's Pre-Motion Letter asserts that Esports "knew of and tolerated" Johnson's misconduct because Esports became aware of Johnson's misconduct by a letter from Ayrton on March 28, 2022. However, Johnson denied Ayrton's allegations regarding his misconduct.[3] But upon revisiting the issue and conducting a more thorough investigation, Esports determined that Johnson should be terminated for cause due to his incurable misconduct. Nothing in Esports' Counterclaims supports Johnson's conclusory argument that Esports "knew of and tolerated" Johnson's misconduct.[4] Thus, the Counterclaims should not be dismissed.

We thank the Court for its courtesies and attention to this matter.

Respectfully submitted,

/s/ Michael H. Masri
Michael H. Masri
Steven E. Frankel

cc: All Counsel of Record via ECF

---

[3] Indeed, Johnson continues to falsely maintain, in his Amended Complaint, that he voted in favor of the transaction. *See* Johnson's Amended Complaint, ¶ 21 (ECF 17).

[4] Moreover, it appears courts only apply the "knew of and tolerated" defense to the first standard of the faithless servant doctrine. *See Carco Group, Inc.*, 383 Fed. Appx. at 77 (citations omitted) ("Courts applying even the first of the two legal standards described above 'have found disloyalty not to be 'substantial' only where the disloyalty consisted of a single act, or where the employer knew of and tolerated the behavior.'").