UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
Grant Johnson
        Plaintiff,                                 Case No. 1:22-cv-10861

    -against-

                                                        NOTICE TO TAKE DEPOSITION
Esports Entertainment Group, Inc.          UPON ORAL EXAMINATION
        Defendant.
--------------------------------------------------------X

        **PLEASE TAKE NOTICE**, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiff, by his attorneys, will take the deposition of the **Corporate Representative of ESPORTS ENTERTAINMENT GROUP, INC. on Tuesday, June 27, 2023, at 10:00 a.m. at the offices of Meltzer, Lippe, Goldstein & Breitstone, LLP, located at 70 East 55th Street, 19th Floor, New York, NY 10022.** Such examination will be recorded by stenographic means, and will be recorded by videographer. Further, this examination will be conducted before a Notary (or other officers authorized to administer oaths), and will continue from such date until completion. The specific areas of inquiry are attached as **Exhibit A.**

        **PLEASE TAKE FURTHER NOTICE**, that pursuant to Rule 30(b)(6) and 34(b) of the Federal Rules of Civil Procedure, Defendant is required to produce, in advance of his/her deposition, all of the documents requested in Plaintiff's forthcoming request for production of documents.

Dated: New York, NY                    ALAN L. FRANK LAW ASSOCIATES, P.C.
       May 17, 2023

                                              By:_____
                                             Alan L. Frank, Esquire
                                             45 Broadway, Suite 720
                                             New York, NY  10006
                                             215-935-1000
                                             *Attorney for Plaintiff*

# EXHIBIT "A"
# CORPORATE REPRESENTATIVE OF ESPORTS ENTERTAINMENT GROUP, INC.
# TOPICS

**Matters for Examination of Defendant's Representative under F.R.C.P. 30(b)(6)**

1. Defendant's acquisition of Lucky Dino Gaming Limited (Lucky Dino), the increase in Defendant's gross revenue as a result of acquiring Lucky Dino, and the manner in which Defendant calculated the increase in gross revenue as a result of acquiring Lucky Dino.

2. Defendant's acquisition of Bethard Group Limited (Bethard), the increase in Defendant's gross revenue as a result of acquiring Bethard, and the manner in which Defendant calculated the increase in gross revenue as a result of acquiring Bethard.

3. For each item on the following list of forms of compensation under the Employment Agreement, whether Defendant agrees that Plaintiff is entitled to the amount alleged, whether Defendant contends that Plaintiff is not entitled to any amount, and whether Defendant contends that the amount listed is incorrect (and if so, what is the correct amount).

    a. Bonus for the year 2021 (section 3.03 – derived from table in section 3.03 based on achieving revenues of $16,783,914 against a target of $13,000,000): $450,000
    b. Stock (section 3.04): $1,150,000.
    100,000 shares which would have been registered by July 2021 at a price of $10.50 per share, and 100,000 shares which would have been registered in March 2022 at a price of $1 per share.
    c. Salary (section 3.01 – base compensation of $300,000 plus 3% annual increases through the end of Plaintiff's initial term as provided in article I):
        2021: $9,000.00.
        2022: $18,273.00
        2023: $337,655.00
        2024: $347,765.00
        $712,693.00
    d. Car (section 4.03):
        2022: $800.00.
        2023: $9,600.00.
        2024: $9,600.00.
        $20,000.00
    e. Life insurance (section 4.06):
        2020: $1,932.00
        2021: $1,932.00
        2022: $1,932.00
        2023: $1,932.00
        2024: $1,932.00

    <u>$9,660.00</u>
  f. Tax accounting (section 4.08):
    2020: $2,700.00
    2021: $2,700.00
    2022: $2,700.00
    2023: $2,700.00
    2024: $2,700.00
    <u>$13,500.00</u>
  g. Tax planning (section 4.08):
    2022: $14,946.00
  h. Vacation (section 4.02):
    2023: $32,466.00
    2024: $33,438.00
    <u>$65,904.00</u>
  i. Personal days (section 4.02):
    2023: $6,493.00
    2024: $6,687.00
    <u>$13,180.00</u>

4. The annual "Target" and/or "target annual performance" for the year 2021, as those terms are used under section 3.03 of the Employment Agreement.

5. The "Company's annual performance" for the year 2021 as that term is used under section 3.03, and the manner by which Defendant calculated the Company's annual performance.

6. The percentage relationship between the target annual performance and Company's annual performance for 2021, and the manner by which that is calculated by Defendant.

7. All demands and requests by Grant Johnson for shares, bonuses, or any other form of compensation under the Employment Agreement, and Defendant's responses.

8. The audit conducted by Friedman LLP (now merged with and known as Marcum LLP) and its auditors Willem VanderBerg and Justin VanFleet, which audit concerned the allegations of fraud in the March 28, 2022 letter from Alto Opportunity Master Fund, SPC – Segregated Master Portfolio B ("Alto").

9. The December 3, 2022 letter from Jan Blackhurst notifying Grant Johnson of his termination – specifically, who participated in preparing the letter and over what period of time it was prepared.

10. When Defendant learned that Grant Johnson had committed fraud in the performance of his duties as CEO.

11. When Defendant learned that Grant Johnson had committed willful misconduct in the performance of his duties as CEO.

12. When Defendant made the decision to terminate Grant Johnson.

13. Which person or people participated in making the decision to terminate Grant Johnson.

14. The votes of each member of Defendant's board on the vote on debt conversion finalized December 20, 2021 and discussed in Defendant's December 3, 2022 termination letter to Plaintiff on page 3, paragraph 2.

15. The factual basis for Defendant's defense to the defamation claim of common interest qualified privilege.

16. The factual basis for Defendant's truth defense to the defamation claim.

17. The factual basis for Defendant's contention that Plaintiff failed "to promote the Company as section 2.01(a)(i) requires", as alleged in your filing at ECF 18, page 5, footnote 2.

18. The factual basis for Defendant's representations in its filings at ECF 13, page 5 and ECF 18, page 5 with respect to certain cash and stock compensation Plaintiff allegedly earned prior to his termination, that "clear documentary evidence demonstrates Johnson forfeited and/or was not entitled to such alleged compensation."

19. The factual basis for Defendant's representations that "Johnson's fraud and misconduct was incapable of being cured because Aryton was not willing to consent to Esports selling assets or obtaining critical loans while Johnson was CEO" as alleged in Defendant's filings at ECF 13, page 5 and ECF 18, page 5.

20. The factual basis for Defendant's contention that "Esports can also demonstrate Johnson's misconduct caused serious injury to the company" as alleged in Defendant's filings at ECF 13, page 5 and ECF 18, page 5.

21. The factual basis for Defendant's contention that the board minutes "reflect a 'cover up' by Johnson", as alleged in Defendant's filings at ECF 13, page 4 and ECF 18, page 4.

22. The factual basis for Defendant's contention that "Johnson made material representations on behalf of both himself and Esports, including but not limited to, that he would vote his shares in favor of the Aryton transaction, which Johnson later proved false by voting against the transaction" as alleged in Defendant's filings at ECF 13, page 4 and ECF 18, page 4.

23. The factual basis for Defendant's contention that Plaintiff committed "fraud and/or willful misconduct in the performance of his duties as CEO" as alleged in Defendant's filings at ECF 13, page 1 and ECF 18, page 1