

**MELTZER LIPPE GOLDSTEIN & BREITSTONE, LLP**
190 Willis Avenue, Mineola, NY 11501 • T. 516.747.0300
www.meltzerlippe.com

*Michael H. Masri, Esq.*
*Phone: (516) 747-0300*
*E-mail: mmasri@meltzerlippe.com*

August 14, 2023

Honorable Paul G. Gardephe
United States District Court
Southern District of New York
40 Foley Square, Room 2204
New York, New York 10007

Re:   *Grant Johnson v. Esports Entertainment Group, Inc.*, 1:22-cv-10861 (PGG)
       MLGB File No. 17818-00040

Your Honor:

We represent defendant Esports Entertainment Group, Inc. ("Esports") and: (i) respond to plaintiff Grant Johnson's ("Johnson") pre-motion letter and (ii) request a pre-motion conference with respect to Esports' proposed summary judgment motion.

Johnson was properly terminated for cause pursuant to his Employment Agreement after: (i) Johnson admittedly signed the May 28, 2021 Securities Purchase Agreement between Esports and Ayrton ("Securities Agreement") borrowing Thirty-Five Million Dollars in exchange for, among other things, Johnson's individual agreement to vote the Esports shares he controlled in favor of converting said debt to equity in Esports; (ii) Johnson admittedly certified he controlled shares held in a trust for his benefit; (iii) said trust admittedly voted against the debt conversion; and (iv) as a result, Ayrton refused to work with Esports while Johnson remained CEO.

Johnson requests partial summary judgment for stock and cash bonuses notwithstanding: (i) Johnson did not earn such bonuses under his Employment Agreement; and (ii) Johnson either waived such bonuses and/or his receipt of such bonuses are barred by the Faithless Servant doctrine.  In addition, Johnson's alleged damages are more than offset by the damages arising from Johnson's violation of the Securities Agreement and other misconduct.

Moreover, Esports seeks summary judgment declaring Johnson was properly terminated because he either fraudulently agreed to vote the Esports shares he controlled in favor of the debt to equity conversion at the time he executed the Securities Agreement or he subsequently engaged in willful misconduct when he voted the shares he controlled against the debt to equity conversion in violation of the Securities Agreement. Such failures violated Johnson's Employment Agreement and could not be cured.  Similarly, Esports also seeks summary judgment dismissing Johnson's claim that he was defamed given, among other things, Esports accurately reported terminating Johnson for cause under the terms of Johnson's Employment Agreement.

**MELTZER LIPPE GOLDSTEIN & BREITSTONE, LLP**
Honorable Paul G. Gardephe
August 14, 2023
Page 2

### A. Johnson is Not Entitled to Summary Judgment for Stock Bonuses

Johnson materially omits the terms of his Employment Agreement in connection with his flawed stock bonuses claim.  Section 3.04[1] provides, in relevant part, "the Executive will receive 100,000 shares of common stock of the Company for each stock or asset acquisition that the Company consummates during the term of his employment that increases the gross revenues of the Company by $10,000,000.00 or more, **as determined by the Company's auditors and the Board of Directors**."  (ECF 17-1 (emphasis added).)  Johnson cites no evidence that Esports' auditors and Board of Directors ever determined that gross revenues from either Bethard or Lucky Dino caused Esports' revenues to increase by $10,000,000.

Moreover, Johnson cannot rely on the incomplete deposition of Michael Villani which was adjourned and, further, neither this office or Mr. Villani were extended the opportunity to timely review Mr. Villani's transcript.  In any event, Johnson cannot identify any evidence indicating that the Company's auditors and the Board of Directors determined that any given acquisition increased Company revenues by $10,000,000 or more.  Thus, the condition precedent set forth in the Employment Agreement for any such bonuses was not satisfied.

Finally, Johnson offers the unsupported conclusion, lacking any calculation or analysis, that the stock bonuses are worth $1.1 million.  Moreover, Johnson failed to produce any evidence during discovery, other than bald unsupported calculations in response to Esports' interrogatories, to support his $1.1 million claim.

### B. Johnson is Not Entitled to Summary Judgment for Cash Bonuses

As with the stock bonus claim, Johnson also materially omits key language and selectively paraphrases § 3.03[2] of the Employment Agreement.  Section 3.03 provides, in material part, the Company shall pay a cash bonus "determined by the relationship between the Company's annual performance and an **annual target performance set each year by mutual agreement between the Board of Directors and the Executive** …."  (ECF 17-1 (emphasis added).)

Johnson ignores the requirement that annual target performance be set "by mutual agreement between the Board of Directors and the Executive" and produced no evidence that such target was ever agreed upon with the Board and set.  Moreover, contemporaneous documents show no such targets were set.  *See, e.g.,* Ex. A (October 21, 2022 email from Michael Villani to Jennifer Johnson (EEG0013790) ("We discussed this with Dan and were not aware of any Targets set…").

Finally, Johnson offers the unsupported conclusion, lacking any calculation or analysis, that the cash bonus is worth $450,000.  Moreover, Johnson failed to produce any evidence, other than conclusory unsupported calculations, to support this claim.

---

[1] Johnson mis-cites § 3.03.

[2] Johnson mis-cites § 3.04.


**MELTZER LIPPE GOLDSTEIN & BREITSTONE, LLP**

Honorable Paul G. Gardephe
August 14, 2023
Page 3

### C. The Faithless Servant and Waiver Doctrines Bar Summary Judgment

Johnson forfeited any bonuses, and must disgorge his compensation, due to his breaches of his duty of loyalty and misconduct as a faithless servant because: (i) Johnson hid his first currently known act of disloyalty, which occurred when he signed the Ayrton Securities Purchase Agreement on May 28, 2021[3] in both his personal and company capacity, and promised he would vote his and his Affiliates' shares in favor of the debt conversion transaction notwithstanding he either fraudulently intended not to comply or subsequently willfully breached; and (ii) Johnson agreed to waive his bonuses if Esports engaged a marketing company, RB360. *See* Ex. B (February 8, 2022 email) ("I will put my bonus against this that if we are not at $10 as a min for at least two weeks over the 6 month period of their engagement I will waive my bonus."). It is also indisputable that Esports engaged RB360 but failed to achieve a $10 stock price minimum for at least two weeks before Johnson himself terminated that engagement.

### D. Summary Judgment Declaring Esports Properly Terminated Johnson is Warranted

Notwithstanding his for cause termination, Johnson alleges by "terminating Johnson before the end of the initial term of the Employment Agreement despite the 'Cause' requirement at section 5.02(b)" and "failing to give notice and 60 days within which to cure any alleged breach", Esports breached the Employment Agreement. *See* First Amended Complaint ("Complaint") (ECF 17) at ¶¶ 42-45.

The Employment Agreement addresses "Cause" to include as follows:

> **Fraud or willful misconduct on the part of the Executive in the performance of his duties as an employee of the Company**, or gross negligence on the part of the Executive in the performance of his duties as an employee of the Company causing demonstrable and serious injury to the Company, provided that the Company has given written notice of such breach which notice describes in detail the breach asserted and stating that it constitutes notice pursuant to this Section 5.02(b)(iii), and which breach, **if capable of being cured**, has not been cured within sixty (60) days after such notice or such long period of time if Executive proceeds with due diligence not later than ten (10) days after such notice to cure such breach. *See* ECF 17-1 at § 5.02 (emphasis added).

Johnson admits[4] receiving written notice describing the "basis for a for-cause termination" (the "Notice"), which states, in relevant part:

> … you executed and agreed to the terms of the enclosed May 28, 2021 Securities Purchase Agreement between the Company and Ayrton ("Securities Agreement") and the enclosed related June 2, 2021 Senior Convertible Note between the Company and Ayrton ("Senior Convertible Note").

---

[3] Johnson's pre-motion letter misleadingly argues Johnson's first misconduct was in November or December 2021.

[4] *See* Complaint (ECF 17) ¶¶ 16, 19.

**MELTZER LIPPE GOLDSTEIN & BREITSTONE, LLP**
Honorable Paul G. Gardephe
August 14, 2023
Page 4

The Securities Agreement and Senior Convertible Note allowed the Company to borrow Thirty Five Million Dollars ($35,0000,0000 [sic]) in exchange for, among other things, extending Ayrton the opportunity to convert portions of said debt to equity.

Section 3 of the Senior Convertible Note, entitled "Conversion of Note," provides at 3(d)(ii) that Ayrton could elect to convert portions of the debt subject to stockholder approval.  And, **under Section 4.11 (d) of the Securities Agreement, both you and the Company represented that:**

["]**Grant Johnson, the Company's Chief Executive Officer, agrees to vote all of the shares of Common Stock over which Grant Johnson or his Affiliates has voting control in favor of Shareholder Approval until such time as Shareholder Approval has been obtained or no Purchaser holds any Securities, which agreement by Grant Johnson shall not be revocable.**["]

Notwithstanding your and the Company's irrevocable agreement, you voted against Ayrton's conversion of debt.  Either: you fraudulently and falsely promised to vote in favor of the debt conversion when you signed the May 28, 2021 Securities Purchase Agreement; or, after May 28, 2021, engaged in willful misconduct and/or gross negligence when you secretly determined that you and your Affiliates would vote against the debt conversion despite your and the Company's expressed irrevocable agreement.  In either event, you failed to promote the interests of the Company.

On December 20, 2021, the stockholder votes were finalized and the stockholders - including yourself or your Affiliates as defined in the Securities Agreement - voted against converting the debt. **As such, you caused the Company to breach the Securities Agreement**.  *See* Notice (ECF 17-2) (emphasis added).

Considering the above, Esports properly terminated Johnson for Cause and did not defame Johnson by truthfully stating Johnson was terminated for Cause.

First, it is undisputed Johnson signed the Securities Agreement intending to be personally bound with respect to Section 4.11(d), promising to vote all of the shares of Common Stock over which he or his Affiliates have voting control in favor of Shareholder Approval of the debt to equity conversion.  *See* Securities Agreement (ECF 23-1) at 37, 45.

Second, it is undisputed that the shareholder approval of the Ayrton conversion failed because Johnson's affiliate, the Next Generation Holdings Trust (the "Trust"), voted against the debt to equity conversion and was the swing vote.  *See* Ex. C, Johnson Depo. 106:12-107:22.

Third, it is undisputed that Johnson signed multiple documents filed with the SEC, including the proxy statement for the shareholder vote at issue, certifying and swearing that he controlled the Trust.  *See* Ex. D at 20 (Schedule 14A) ("Mr. Grant Johnson and Next Generation Holdings Trust, controlled by Grant Johnson currently hold 3,353,334 shares of common stock and 90,800 options to purchase shares of common stock currently exercisable.").

**MELTZER LIPPE GOLDSTEIN & BREITSTONE, LLP**
Honorable Paul G. Gardephe
August 14, 2023
Page 5

      Fourth, the foregoing demonstrates that Johnson either fraudulently signed the Securities Agreement promising to vote the shares he controlled in favor of the transaction while knowing he would not, or else he signed the Securities Agreement intending to vote in favor but acted with willful misconduct by subsequently choosing to breach that Securities Agreement by voting against the debt to equity conversion.[5]

      Fifth, it is indisputable that as a result of Johnson's fraud or willful misconduct, Ayrton, which was Esports' largest debt holder, refused to work with or accommodate Esports while Johnson remained CEO.  *See* Ex. F (August 23, 2022 Board Minutes) ("Confirmed [Ayrton] reaffirming what's in the letter, [Ayrton] will not negotiate wants … for Grant to step down.").  Thus, sixty (60) days' notice was not required here because the Employment Agreement explicitly only requires such notice of the breach "if capable of being cured."  Here, Johnson's breach and misconduct were incurable.

      Finally, Johnson also alleges a defamation cause of action, alleging Esports' January 13, 2023 Form S-1 and February 21, 2023 Form 10-Q SEC disclosures falsely state "Johnson was terminated for cause …."  (Complaint ¶¶ 29, 30, 34, 48-51.)  Notwithstanding:  (i) the statement is true, as demonstrated above; (ii) "the statement at issue is protected by a common interest qualified privilege and the pleading lacks adequate allegations of … malice to overcome such privilege;" (iii) Johnson filed the instant lawsuit publicizing his termination for cause prior to the SEC disclosures; and (iv) the SEC disclosures explicitly discuss Johnson's instant legal proceeding.

      If the Court permits, we ask that Esports be granted sufficient time to brief the opposition and motion.  Thank you for the Court's courtesies and attention to this matter.

                    Respectfully submitted,

                    /s/ Michael H. Masri
                    Michael H. Masri

cc:  All Counsel of Record via ECF

---

[5] Johnson's allegation that Esports must also show "demonstrable and serious injury to the Company" misreads the Employment Agreement, which provides such requirement only for gross negligence, but not fraud or willful misconduct.  *See* ECF 17-1 § 5.02(b)(iii).  Moreover, Johnson's misconduct <u>did</u> cause serious injury to Esports.  For example, Esports was required to pay Ayrton additional principal of approximately $6 million as a result of Johnson's misconduct.  *See, e.g.* Ex. E (December 31, 2021 Form 10-Q) at EEG00015, ("$5,999,662 Loss on conversion of senior convertible note").