UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------

Grant Johnson,

        Plaintiff,                        Civil Action
                                             Docket No. 1:22-cv-10861

v.

Esports Entertainment Group, Inc.,
Alan Alden,
Damian Mathews,
Jan Jones Blackhurst,

        Defendants.
-------------------------------------------------------

## SECOND AMENDED COMPLAINT

### Summary

1. This case arises out of Defendant Esports Entertainment Group's breach of an Employment Agreement, which is Exhibit A to this Complaint. Plaintiff alleges three counts:

   a. Esports terminated Plaintiff for contrived reasons despite a narrowly defined "for cause" requirement at section 5.02(b) and failed to pay contractually-agreed wages, bonuses, and severance under sections 3.01 – 3.04 and 5.04. (Count I – Breach of Contract).

   b. Esports made several false statements in its S-1 filing of January 13, 2023, and repeated them in Defendant's 10-Q filing on February 21, 2023, that Plaintiff was terminated "for cause". (Count II – Defamation).

   c. The true reason for Plaintiff's termination was Plaintiff's repeated objections to proposed (and later implemented) insider trading. Esports and three of its board members, Defendants Alden, Mathews, and Blackhurst, violated New York's

whistleblower law (N.Y. Lab. Law § 740) by firing Plaintiff after Plaintiff objected to the following illegal activity:

   i. The board members provided insider information to Waqas Khatri about an imminent 100:1 reverse split. The board then delayed implementation of the reverse split at Khatri's urging so that Khatri could sell his shares prior to the split.

   ii. The board simultaneously evaded Nasdaq's 20% rule by issuing Khatri the a significant amount of shares while changing the record voting date, allowing Khatri to vote his newly acquired shares to give himself even more shares.

   iii. The board's actions allowed Khatri not only to sell a large amount of stock based on insider information, but also to increase his leveraging of that information even beyond what would ordinarily be possible under the 20% rule.

**Parties**

2. Plaintiff is an adult individual who is a citizen of Canada and resides in Canada.

3. Defendant is a Nevada corporation with a principal place of business in New Jersey.

4. Defendant Alan Alden is an adult individual residing in Malta.

5. Defendant Damian Mathews is an adult individual residing in New Zealand.

6. Defendant Jan Jones Blackhurst is an adult individual residing in Nevada.

**Jurisdiction and Venue**

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(2) because the only Plaintiff is a citizen of a foreign state, the only Defendant is a Nevada corporation with a

principal place of business in New Jersey, and the amount in controversy exceeds $75,000 exclusive of costs and interest.

8. Venue is proper in this District because of a choice-of-venue clause in the parties' agreement at section 9.01.

**Facts**

9. In September of 2020, the parties entered an Employment Agreement, which is Exhibit A to the Complaint.

10. Article I of the Employment Agreement states that "the Company will continue to employ Executive for the period beginning retroactively on February 1, 2020 (the 'Commencement Date') and ending on January 31, 2025, (the 'Initial Term')." Ex. A, art. I.

11. Following the "Initial Term", the Employment Agreement automatically renews for additional one-year periods unless and until either party provides written notice to the other of a desire to terminate the Employment Agreement. Id.

12. Article III sets out Plaintiff's "Base Compensation." Ex. A, art. III.

13. Section 3.01 provides a "Base" beginning at $300,000 per year, which increases by three percent each year over the previous year's Base. Ex. A, sec. 3.01.

14. Section 3.03 provides a "Cash Bonus" based upon the relationship between the Company's annual performance and an annual target performance. Ex. A, sec. 3.03.

15. Section 3.04 provides a "Stock Bonus" based upon achieving certain metrics. Ex. A, sec. 3.04.

16. Article V, "Termination", sets out the only means by which the Defendant or the Plaintiff may terminate the Employment Agreement (other than notice under article I of the desire to terminate at the end of a term).

17. The only section therein which Defendant alleges justified the termination is section 5.02(b), "Cause". Section 5.02 provides:

5.02 <u>By the Company.</u> This Agreement may be terminated by the Company upon written notice to the Executive upon the first to occur of the following:
…
(b) <u>Cause.</u> Upon the Executive's commission of Cause (as defined herein). The term "Cause" shall mean the following:

(i) Any willful violation by Executive of any material provision of this Agreement (including without limitation Sections 6.01 and 6.02 hereof) causing demonstrable and serious injury to the Company, upon written notice of same by the Company describing in detail the breach asserted and stating that it constitutes notice pursuant to this Section 5.02(b)(i), which breach, if capable of being cured, has not been cured within sixty (60) days after such notice or such longer period of time if Executive proceeds with due diligence not later than ten (10) days after such notice to cure such breach.

(ii) Embezzlement by Executive of funds or property of the Company;

(iii) Fraud or willful misconduct on the part of Executive in the performance of his duties as an employee of the Company, or gross negligence on the part of Executive in the performance of his duties as an employee of the Company causing demonstrable and serious injury to the Company, provided that the Company has given written notice of such breach which notice describes in detail the breach asserted and stating that it constitutes notice pursuant to this Section 5.02(b)(iii), and which breach, if capable of being cured, has not been cured within sixty (60) days after such notice or such longer period of time if Executive proceeds with due diligence not later than ten (10) days after such notice to cure such breach; or

(iv) A felony conviction of Executive under the laws of the United States or any state (except for any conviction based on a vicarious liability theory and not the actual conduct of the Executive).

4

> Upon a termination for Cause, the Company shall pay Executive his Base and benefits including vacation pay through the date of termination of employment; and Executive shall receive no severance under this Agreement.

Ex. A, sec. 5.02.

18. Section 5.04 provides for "Severance" payment upon any termination of employment other than for cause. Ex. A, sec. 5.04.

19. On December 3, 2022, Defendant terminated Plaintiff's employment. Defendant gave Plaintiff a termination letter of the same date, which is Exhibit B to this Complaint.

20. The letter alleges that termination is for cause. Ex. B, page 1.

21. Defendant terminated Plaintiff immediately and did not provide 60-days' notice and an opportunity to cure under section 5.02(b) of the Employment Agreement (Ex. A).

22. Defendant sets out its alleged basis for a for-cause termination beginning at page 2 of the December 3, 2022 letter (Ex. B) under the heading "Your Fraud, Willful Misconduct and/or Gross Negligence."

23. Even if true, these allegations would not constitute "fraud, willful misconduct, and/or gross negligence."

24. Moreover, the allegations are false. For example, while Defendant claimed on December 3, 2022 that Plaintiff committed "fraud", company minutes (Exhibit C) show that the board of directors considered these same allegations back on April 18, 2022 and "… unanimously agreed that no investigation into Grant's alleged actions from Ayrton lawyer was necessary…" Ex. C, page 2. While the letter alleges that Plaintiff voted his shares against conversion of debt (Ex. B, page 3), Plaintiff in fact voted in favor.

25. Defendant breached article I and section 5.02(b) of the Employment Agreement by terminating Plaintiff before the end of the initial term of the Employment Agreement

despite the "Cause" requirement at section 5.02(b).  Defendant's reasons stated in Defendant's termination letter are false.  Even if true, Defendant's allegations would not constitute "Cause" because the term is narrowly defined as "Fraud or willful misconduct … or gross negligence" and requires "demonstrable and serious injury to the Company".  Defendant's allegations do not constitute fraud, willful misconduct, or gross negligence, and Defendant has not alleged demonstrable and serious injury to the Company.

26. Defendant breached section 5.02(b) by failing to give notice and 60 days within which to cure any alleged breach.  Plaintiff did not cause any injury to the company, much less "demonstrable and serious injury" that is not "capable of being cured".  Ex. A., sec. 5.02(b)(i) and (iii).

27. Defendant breached sections 3.01 – 3.04 by failing to pay contractually-agreed compensation, including both compensation already earned and compensation for the remainder of the current term of the Employment Agreement.

28. Defendant breached section 5.04 by failing to pay agreed-upon compensation for any termination other than for cause.

29. As a result of Defendant's breach, Plaintiff has suffered damages including:  base salary under section 3.01 for the remainder of the initial term of the Employment Agreement; cash bonuses earned for 2021 and 2022 under section 3.03 of the Employment Agreement; stock bonuses earned under section 3.04 of the Employment Agreement; and compensation under section 5.04 of the Employment Agreement for any termination other than for cause.

30. Plaintiff's damages include:

    a. Cash bonus of $450,000 under section 3.03 for the year 2021, which is derived from the table in the section based on achieving revenues of $16,783,914 against a target of $13,000,000.

    b. $1,150,000 corresponding to 200,000 shares under section 3.04 – 100,000 of which would have been registered by July 2021 at a price of $10.50 per share, and the other 100,000 of which would have been registered in March 2022 at a price of $1 per share.

    c. Base compensation of $300,000 plus 3% annual increases under section 3.01 on the two remaining years of Plaintiff's initial term under article I.

    d. Compensation corresponding to Defendant's failure to pay a 3% increase under section 3.01 for the years 2021 and 2022.

    e. Severance under section 5.04 at $355,350 plus $366,010, plus $800 / month under section 4.03, $161 / month under section 4.06, and $2,700 / year under section 4.08.

    f. Employee benefits under article IV which Defendant has failed to provide for years already worked by Plaintiff, including $800 / month under section 4.03, $161 / month under section 4.06, $2,700 / year under section 4.08, an additional one-time payment of $14,946 under section 4.08, and vacation and personal days under section 4.02.

31. Plaintiff is also entitled to an award of attorney's fees under section 9.02 of the Employment Agreement.

32. Defendant published its S-1 statement on January 13, 2023.

33. Defendant repeatedly makes the false statement that Plaintiff was terminated for cause:

    a. "Mr. Johnson was terminated for cause by the Board on December 3, 2022."

    b. "The former CEO was terminated for cause by the Board from his position as CEO on December 3, 2022."

    c. "Mr. Johnson was terminated for cause by the Board from his position as Chief Executive Officer on December 3, 2022."

    d. "Mr. Johnson resigned following his termination for cause, by the Board …"

    e. "Mr. Johnson resigned following his termination for cause, by the Board …"

34. The statements that Plaintiff was terminated for cause are all false.

35. Four of the five statements identify Plaintiff by name. The remaining statement's application to Plaintiff is clear because it identifies him as "The former CEO" who was terminated on December 3, 2022, and the document elsewhere identifies Plaintiff as the CEO terminated on December 3, 2022.

36. These statements were published within Defendant's SEC filing.

37. These false allegations about Plaintiff were then repeated in Defendant's 10-Q filing on February 21, 2023.

38. These statements were made with either knowledge of their falsity or reckless disregard for their truth.

39. The defamation rises to the level of defamation per se because it concerns Plaintiff's trade, business, and profession.

40. Plaintiff's employment agreement is an exhibit to the S-1 filing, so in context it is clear that "for cause" is limited to willful violation of his agreement, embezzlement, fraud or willful misconduct, or a felony conviction. Ex. A, sec. 5.02(b).

41. As a result of Defendant's conduct, Plaintiff has suffered damages.

42. At the time of Plaintiff's termination, Defendant Alden owned approximately 54,762 shares of Defendant Esports.

43. At the time of Plaintiff's termination, Defendant Mathews owned approximately 258,000 shares of Defendant Esports.

44. At the time of Plaintiff's termination, Defendant Blackhurst was entitled to stock options in Defendant Esports pursuant to the March 2022 letter appointing Blackhurst a Director of the company.

45. During Plaintiff's employment, the individual Defendants discussed and later implemented the following illegal activity:

    a. The board members provided insider information to Waqas Khatri about an imminent 100:1 reverse split. The board then delayed implementation of the reverse split at Khatri's urging so that Khatri could sell his shares prior to the split.

    b. The board simultaneously evaded Nasdaq's 20% rule by issuing Khatri the a significant amount of shares while changing the record voting date, allowing Khatri to vote his newly acquired shares to give himself even more shares.

    c. The board's actions allowed Khatri not only to sell a large amount of stock based on insider information, but also to increase his use of that information even beyond what would ordinarily be possible under the 20% rule.

46. Defendants' actions constituted unlawful insider trading because Defendants not only conveyed insider information to Khatri, but also adjusted the timing of the reverse split and the record voting date so that Khari could maximize his benefits in trading based upon the insider information.

47. Plaintiff had a reasonable belief that Defendants' proposed course of conduct was illegal, since it was actually illegal.

48. Plaintiff repeatedly objected to this proposed course of conduct to Defendants.

49. Defendants terminated Plaintiff because of his objections.

**Count One**
**Breach of Contract**
**(Defendant Esports Entertainment Group, Inc.)**

50. Plaintiff incorporates by reference the foregoing paragraphs.

51. The Employment Agreement (Ex. A) was a valid and enforceable contract between Plaintiff and Defendant.

52. Plaintiff performed his obligations under the Employment Agreement.

53. Defendant breached article I and section 5.02(b) of the Employment Agreement by terminating Plaintiff before the end of the initial term of the Employment Agreement despite the "Cause" requirement at section 5.02(b).  Defendant's reasons stated in Defendant's termination letter are false.  Even if true, Defendant's allegations would not constitute "Cause" because the term is narrowly defined as "Fraud or willful misconduct … or gross negligence" and requires "demonstrable and serious injury to the Company". Defendant's allegations do not constitute fraud, willful misconduct, or gross negligence, and Defendant has not alleged demonstrable and serious injury to the Company.

54. Defendant breached section 5.02(b) by failing to give notice and 60 days within which to cure any alleged breach.

55. Defendant breached sections 3.01 – 3.04 by failing to pay contractually-agreed compensation, including both compensation already earned and compensation for the remainder of the current term of the Employment Agreement.

56. Defendant breached section 5.04 by failing to pay agreed-upon compensation for any termination other than for cause.

57. As a result of Defendant's conduct, Plaintiff has suffered damages including the loss of the remainder of the current term of employment, compensation under sections 3.01 – 3.04 of the Employment Agreement, compensation already earned but not paid under sections 3.03 and 3.04 of the Employment Agreement, and compensation under section 5.04 of the Employment Agreement.

## Count Two
## Defamation
### (Defendant Esports Entertainment Group, Inc.)

58. Plaintiff incorporates by reference the foregoing paragraphs.

59. Defendant published its S-1 statement on January 13, 2023.

60. Defendant repeatedly makes the false statement that Plaintiff was terminated for cause:

    a. "Mr. Johnson was terminated for cause by the Board on December 3, 2022."

    b. "The former CEO was terminated for cause by the Board from his position as CEO on December 3, 2022."

    c. "Mr. Johnson was terminated for cause by the Board from his position as Chief Executive Officer on December 3, 2022."

    d. "Mr. Johnson resigned following his termination for cause, by the Board …"

    e. "Mr. Johnson resigned following his termination for cause, by the Board …"

61. The statements that Plaintiff was terminated for cause are all false.

62. Defendant repeated these false allegations about Plaintiff in its 10-Q filing on February 21, 2023

63. Four of the five statements identify Plaintiff by name. The remaining statement's application to Plaintiff is clear because it identifies him as "The former CEO" who was terminated on December 3, 2022, and the document elsewhere identifies Plaintiff as the CEO terminated on December 3, 2022.

64. These statements were published within Defendant's SEC filing.

65. These statements were made with either knowledge of their falsity or reckless disregard for their truth.

66. The defamation rises to the level of defamation per se because it concerns Plaintiff's trade, business, and profession.

67. Plaintiff's employment agreement is an exhibit to the S-1 filing, so in context it is clear that "for cause" is limited to willful violation of his agreement, embezzlement, fraud or willful misconduct, or a felony conviction. Ex. A, sec. 5.02(b).

68. As a result of Defendant's conduct, Plaintiff has suffered damages.

### Count Three
### New York's whistleblower law (N.Y. Lab. Law § 740, et seq.)
### (All Defendants)

69. Plaintiff incorporates by reference the foregoing paragraphs.

70. Plaintiff was an employee of the corporate Defendant, Esports Entertainment Group.

71. During Plaintiff's employment, the individual Defendants discussed and later implemented the following illegal activity:

    a. The board members provided insider information to Waqas Khatri about an imminent 100:1 reverse split. The board then delayed implementation of the reverse split at Khatri's urging so that Khatri could sell his shares prior to the split.

 b. The board simultaneously evaded Nasdaq's 20% rule by issuing Khatri the a significant amount of shares while changing the record voting date, allowing Khatri to vote his newly acquired shares to give himself even more shares.

 c. The board's actions allowed Khatri not only to sell a large amount of stock based on insider information, but also to increase his use of that information even beyond what would ordinarily be possible under the 20% rule.

72. Defendants' actions constituted unlawful insider trading because Defendants not only conveyed insider information to Khatri, but also adjusted the timing of the reverse split and the record voting date so that Khari could maximize his benefits in trading based upon the insider information.

73. Plaintiff had a reasonable belief that Defendants' proposed course of conduct was illegal, since it was actually illegal.

74. Plaintiff repeatedly objected to this proposed course of conduct to Defendants.

75. Defendants terminated Plaintiff because of his objections.

76. As a result of Defendants' conduct, Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendants for an amount in excess of $75,000, plus interest, costs, attorney's fees, and such other relief as the Court deems just and proper.

      Respectfully submitted,

       /s/ Alan L. Frank
      Alan L. Frank, Esq.
      Alan L. Frank Law Associates, P.C.
      45 Broadway, Suite 720
      New York, NY 10006
       And

        135 Old York Road  
        Jenkintown, PA 19046  
        215-935-1000  
        215-935-1110 (fax)  
        afrank@alflaw.net  
        Counsel for Plaintiffs

August 15, 2023